20-3600 from the Eastern District of Missouri, Edward Delker v. Mastercard International, et al. May it please the court. Mr. Zewde. May it please the court. My name is Mark Zewde. I'm honored to be before the court representing Ed Delker and requesting this court to reverse the dismissal with prejudice below of Mastercard's 12B6 motion to dismiss. The issue that this case presents is fairly straightforwardly presented. From the face of the Second Amended Complaint and all its exhibits, given that Second Amended Complaint and its exhibits, the benefit of every favorable inference, is it merely plausible that the Delkers reasonably believed that Julia Delker made the election to receive a three-time salary life insurance coverage benefit? If so, there really is no question from the briefs or from the decision below that this would be an actionable claim, certainly at least as a breach of fiduciary duty, if not also as a breach of contract or as fraud, under either ERISA or under state law, depending on how the court interprets the document that was submitted and was purportedly a plan that covered this action. Now, toward this issue, one key question presents itself. What is this election that appears on the first page of Exhibits B, C, and D to the Second Amended Complaint? What does this elect? A benefit was placed in the elected coverages field by Ms. Delker during her life. Is this election an election to merely receive credits, as MasterCard argues, or was it an election to receive the actual insurance coverage itself? Counsel, I've got to say, I find a lot of these forms very confusing, as you probably do as well. What are the credits exactly? From the record, beyond the election, let's forget about these forms for just a second. What are these credits that the Enrollment Guide speaks about? What are they supposed to do and what are they? So, it is not clear from the face of the complaint, and I agree, Your Honor, it is confusing from the forms. We would anticipate that the evidence would likely show that employees receive different amounts of credits, depending on various factors, primarily seniority. And with these credits, they can elect to receive different types of fringe benefits that the company makes available through a sort of cafeteria plan on its website during an annual enrollment period. That's what I anticipate the evidence will show. Counsel, on what basis are the credits awarded? Is it merely seniority or were there other bases for acquiring the credits? It is not clear from the record, Your Honor. However, we anticipate the evidence would show that it is largely seniority, though also other factors can play a part in how many credits an employee receives and what they can put them towards. We also anticipate the evidence would show… But it's undisputed that the plaintiff here or the plaintiff's decedent qualified or had sufficient credits to qualify for the increased death benefit. Yes, Your Honor. There is no question that, and MasterCard does not deny, that being an employee since prior to 2001, she had the credits by which she could make the election. And the issue is whether the election was made. The court below found it wasn't. The court below found it wasn't even plausible that it was made. We submit that that was a plain factual error. In fact, it's kind of hard to… What do you allege that would show an election was made? The first pages of Exhibits B, C, and D to the complaint. Each one has an elected coverages field. It's a field into which the employee puts various plans. They cannot put a plan in there, we anticipate the evidence would show, unless they have the credits to do it. One of the credits she put in there, if the court looks at Plaintiff's Exhibit B, the cover of it, the first page of it, is a benefit called Life Employer Credit-MasterCard Worldwide Employee. And a similar election, slightly different title, appears on the first page of Exhibits C and D. The question is, MasterCard says that this is an election merely to receive the credits themselves. We have submitted that this is reasonably relied upon and believed by the Delkers to date, an election to receive the coverage itself. The reason why the court erred below in finding it not plausible that this was an election for the coverage itself is because the employees already had the credits. Ms. Delker already had the credits by virtue of her seniority automatically. The only election contemplated is the election to then receive the coverage. Let me ask you this, you've got a lot of things on this page, and I'm just curious, at least according to MasterCard, and I'm sure MasterCard addresses this as well, but is there anything else on this page that was treated by MasterCard the same way that the optional life insurance was? In other words, what I'm asking you is, did Delker receive all of these other coverages and just not receive the optional life that are on these first pages? Again, it's not pleaded, but yes, Your Honor, we anticipate the evidence would show that all these other coverages were in place and were received. For instance, certainly the one-time salary life insurance benefit was received. There's no reason that we have to believe that the medical coverage wasn't received, that dental, the vision, they were all provided per this page. It's only the additional two-time salary life insurance benefit that's been denied. Again, Your Honor, to be fair, that is what we anticipate the evidence would show. It is not clear from the record that those are the facts, but we have no reason to doubt that that's the case, and this is a motion to dismiss under 12b-6, so I think the court needs to indulge those facts as being true. The election, as the court can see it from the first page of Exhibits B, C, and D, results in something. It results in coverage. It doesn't result in credits. There's a column called coverage. The coverage is specified as being... Mr. Zuhl, can I go back to something a little more fundamental? Yes, sir. What do we have before us? As I read the opinion, the breach of contract claim was held to be preempted. I don't know that you made any... Did you make an argument that it's not preempted? Yes, Your Honor, insofar as it is certainly reasonable to rule, based on this record, that there is no applicable ERISA plan at all. And in that regard, if there's no applicable ERISA plan, the court erred in denying Mr. Delker's motion to remand back to the state court and should have recognized a state law claim. The reason for that, of course, is that the plan wasn't signed and actually put into effect by MasterCard until six days after Julia Delker died. Its purported effective date is January 1st, 2016, or such other dates as may be specified herein. I don't recall any argument in the briefs. That the breach of contract claim was not preempted by ERISA. The second part that I'd like to... is I think the district court held that MasterCard's not a fiduciary. Well, that is... And then, ultimately, what are we left with? MasterCard would be a fiduciary the court held if it made the representations. MasterCard rejected... The court below rejected MasterCard's argument that as a matter of law, its alleged representations, the alleged election, wouldn't make MasterCard a fiduciary. It specifically rejected those arguments. The court below effectively found only that MasterCard wasn't a fiduciary merely because it believed that the election had never been made. It found it implausible to think that the election had been made. The court held, though, if the election had been made, as the court can compare the opinion to the fact, that if the election had been made, then, of course, MasterCard has a fiduciary duty to honor that election and to make honest representations with respect to what the plan provides. The preemption argument, Your Honor, also leaves... You're right, the word preemption was not used in that argument, but it is a possibility that ERISA does not even apply here. And that was presented in both of our briefs, our original and reply brief, though not with the word preemption. But another aspect of this, Your Honor, is ERISA itself provides for a breach of contract claim. Subsection A-1 provides for a simple lack of benefits. It's not in addition to the equitable relief provided under A-3. They have to be... They can be pleaded in the alternative, but there's no double recovery, of course. But effectively, breach of contract does apply. The problem the district court, I think, had or should have had, and integrate with count two, is that the plan itself was not named as the defendant to account to the breach of contract claim to the extent it's brought under ERISA. Such a claim should be brought against the plan. The problem was no applicable plan was ever presented. We didn't know what plan to name. This plan, the only plan MasterCard ever submitted to this case, simply did not apply by virtue of its very date. Another aspect of the election that it's important for the court to take into account is that it's not enough... The court does not need to definitively conclude that the coverage itself was in place, that the election was made. Actually, it's rather hard from the face of these pleadings to not conclude that. Rather, the only issue is whether it's completely implausible to think that an employee could reasonably believe that the election was made. In that regard, it becomes a really... MasterCard itself believed it. MasterCard itself believed the election had been made and that the three times coverage was in place. Here's a fascinating thing about the record. It's implied from the record and it's actually a fact that we anticipate the evidence would show. While Mr. Delka believed the three times coverage was there and had planned to submit a claim for three times coverage, he didn't submit one until after MasterCard contacted him and independently concluded, Ms. Delka has made this election. You're entitled to the three times salary benefit. This was not some situation where MasterCard was presented with a claim by Mr. Delka. Ms. Delka had only died six days earlier and only three days earlier than before the telephone call was made by which MasterCard's Director of Global Benefits, the person in charge of the whole thing, reviewed all these records and said, Ms. Delka has three times salary, life insurance benefit coverage in place. And in this regard, it's important to realize that the beneficiary of that, though the beneficiary is not named on Exhibits B, C, and D, MasterCard itself, by its own rules, as the court will see at Appendix Page 174, and that's Document 1-2, Page 150 of 164 in the ECF docs below, Appendix 174, MasterCard itself, by its own rules, says that where a beneficiary is not named, the spouse is the beneficiary. And in this regard, there really is very little question that it certainly was at least reasonable for the Delkers to have believed and to have relied on it since MasterCard itself believed the same thing and never came to a different opinion until it submitted a form under oath to Prudential saying that Mr. Delker was entitled to the three times salary benefit and it received a letter back from Prudential saying, you know what, MasterCard, you never sent us the premiums for this. You never actually enrolled her in that. All you ever did was enroll her in the one-time salary benefit plan. Then MasterCard wrote back to Mr. Delker and said, oops, we made a mistake. And it said an administrative error without saying what the nature of the error was. It did suggest that the error was that they thought that Ms. Delker had failed to enroll in something called optional life insurance and that she also had to elect that in addition to making the election she made on the first pages of B, C, and D. You're well within your rebuttal time. You can continue if you'd like, or you can reserve. I'll reserve my time. My understanding, I'll reserve my time. Thank you, Ron. Ms. Zorn? May it please the Court, Stephanie Zorn on behalf of the MasterCard appellees. This case is very simple. Mr. Delker has filed three complaints in this matter and has failed to allege a representation of additional life insurance that can be reasonably relied upon. MasterCard's ERISA-governed life insurance plan provides a one-time core benefit and an additional optional benefit that must be elected and paid for by the employee. All the benefits are insured by Prudential and Delker acknowledges in all three of his complaints that Ms. Delker did not... Ms. Zorn, is it actually paid for by the employee? I thought that there were credits here that because she was employed at a certain date that she got credits that would pay for that. Correct, Your Honor. Because of her tenure in employment, Ms. Delker was given credits that she could have used to pay for the optional life insurance had she elected it. And she did not elect it. Let me ask you, were those credits valuable to her in any other way if she didn't elect the additional optional life insurance? Would she have applied them to some other benefit or taking them in pay or something like that? Yes, Judge. They were received in cash and that's what the benefit confirmation statements show. Because the benefit confirmation statements show optional life insurance as a waived coverage and accordingly she received the credits as cash instead. Okay. Some of the statements I saw showed that under the employer paid column and the total included the amount for the optional insurance and it sure made it look like the employer paid that as part of the total benefit to the client. So the benefit that you're referencing is life employer credit slash MasterCard employee. That's on the exhibits that my opposing counsel has cited. Right above that it says core employee life prudential employee one time salary. It shows the beneficiary as Edward Delker. Directly beneath that is the information about the credit that she received. It says life employer credit MasterCard worldwide employee two times salary. That's what the credits would have bought her had she elected optional life insurance. No beneficiary is shown because she did not elect optional life insurance and the employer monthly contribution is shown she would have received that as cash instead. Did she receive it as cash? Yes she did. Yes she did. And on page two of the exhibits the benefit confirmation forms that counsel has cited you to it very clearly shows optional life insurance as a waived coverage. Counsel, what is the mechanism for an employee to select the use of the credits for payment of greater life insurance coverage? So first of all Mrs. Delker would have had to apply for optional life insurance. She would have had to submit evidence of insurability to prudential and she would have had to been approved by prudential for the coverage. And how are employees informed of that process? How would Mrs. Delker here how would she have known the proper means for electing to use her credits to improve or to increase her coverage? It's set forth in the exhibits attached to plaintiff's complaint. Open enrollment benefit information that was provided to her I believe they're exhibits A clearly state that employees open enrollment materials from I believe 2007 and 2008 state that employees will receive credit that they can use to pay for optional life insurance if they apply and are approved for that insurance by prudential. So Mrs. Delker was clearly informed that she would have to elect and be approved for the insurance before she could use the credits to pay for it. When you go through open enrollment does it, is there and maybe this isn't in the record but is there an option for take the crash credit or opt for life insurance or is it just basically like this is the only choice you have when you go through open enrollment is to take the credits? So when you go through open enrollment if you had elected optional life insurance you would you would go through the approval process and if you were approved your credits would be used to pay for that insurance. Is that automatic? If I apply both options then I go back to the Chief's question I look at this and I'm like okay I elected, I mean I would think that I elected optional life insurance if there wasn't that option given and then it was the employer's responsibility to do the investigation to figure out whether I'm insurable. That's really what I'm getting at. But Judge you would not think that because you would look at the second page of that form where it says as waived coverage optional life insurance. You waived that coverage and accordingly you're receiving the credits as cash instead. Maybe although I think it's plausible I think there's a plausible explanation the contrary which is you can get up to six times optional life. So I have seen instances in which you have waived optional life or waived a particular coverage because you didn't elect the full amount but you elected something less than that. And here it's a little misleading just to be honest because it says the coverage is two times salary. So what purpose is there for two times salary there if she's just electing credits. The whole thing doesn't make sense to me. Let's put it that way. The purpose of the two times salary is to show the level of credits she's receiving and she could use that level of credit to elect two times salary to be paid for by MasterCard with the credits. She could elect beyond two times salary and she would not receive two times salary. I guess I'm wondering whether this is a better case for summary judgment. I wonder if the district court jumped the gun a little bit. If you're right and she didn't do any of the forms or anything like that then probably the plaintiff is going to lose on summary judgment because at that point the requirements have not been met in the form. But it seems to me that there's enough confusion in this election confirmation which I've seen a lot of them in my lifetime. I've had a lot of different jobs. I did HR work when I was in my previous job and this is very confusing. But that's more of a statement than a question, I guess. Understood. Understood, Your Honor. Ms. Zoen, this is Jed Smith again. What's your explanation for the confusion at MasterCard in its communication with Mr. Delker about the level of life insurance coverage when it seems that the company itself was under the impression that she had elected the higher coverage? There was an administrative error and the head of HR was told that  had been elected. And after Mrs. Delker died Mr. Delker received a letter from MasterCard stating that Mrs. Delker had in fact elected the coverage. The claim was submitted to Prudential and Prudential came back and denied the optional... You're telling me the facts but you're not explaining to me how did that happen? What created this apparent confusion about the election when if it's as clear as you've described it should be certainly the company would have known that she had not elected. But they were under the impression that she had. An individual who wrote the letter to Mrs. Delker was incorrectly advised that the optional life insurance had been elected. And in a large corporation there are many, many HR records and mistakes can happen. No company is perfect. Wouldn't it be the sort of thing that discovery would be appropriate to at least discover who within the company had that impression and the basis for it? And create some legitimacy to the concern of the plaintiff that they had been misled? Respectfully, Your Honor, no. Because this is an ERISA case. Every claim alleged is preempted by ERISA in this case. And the question is whether there was a misrepresentation that could have been reasonably relied upon in violation of ERISA. And here, the representation made after death, the only alleged reliance was foregoing purchase of additional life insurance. And after an individual has died, life insurance can no longer be purchased on that life. So as the District Court found, there was no allegation of reasonable reliance. So the claim of breach based on that post-death statement fails as a matter of law. So no finding of facts are needed with regard to that claim. Could that statement, could that later statement bear on the reasonableness of what Mrs. Delker might have thought at the time she received these election confirmations and such? And the argument would be if MasterCard didn't know, then how's the average employee supposed to know? So MasterCard did not rely on the representations that Mrs. Delker argues she construed as representation of additional life insurance. Those representations show she waived optional life insurance. So MasterCard could not have relied on them in its mistaken belief that she had optional life insurance. The election forms very clearly state that optional life insurance was a waived coverage. She did not rely on that as a basis for mistakenly believing she had enrolled in the optional life insurance. So respectfully no, Your Honor. This case fails as a matter of law and it needs to be analyzed as a matter of law on the basis of the pleadings in the complaint. The third complaint that plaintiff has filed in this case, he clearly lacks the factual predicates to allege claims for misrepresentations of life insurance. His own exhibits to his complaint show that all that was promised were credits, that those credits were received and that Mrs. Delker waived optional life insurance. I would like to reserve the remainder of my time for rebuttal. Your Honor, I'm not sure you're entitled to rebuttal, but I have a question. Do the documents show that she received the credits in cash or payments? It indicates the amount that she would receive as cash. Where does it show that it would be received as cash or how does it show that? By indicating under the employer contribution the amount that would have been a contribution but instead was received as cash. You said was, but was received. Do the documents show that it was received as cash? No, Your Honor, not clearly. However, the plaintiff originally filed an ERISA A1B claim challenging the denial of benefits in his first amended complaint and the administrative record was filed with the district court and that administrative record clearly shows that the plaintiff received the credits as cash. Plaintiff abandoned his A1B claim for whatever reason, probably because the plaintiff was not enrolled in optional life insurance coverage, so that portion of the record is really not at issue on the motion that is pending before this court for review. Okay. So I'll reserve the rest of my time unless there are other questions. I don't see any. Okay, you're served please. Thank you. Mr. Zuhl, you're rebuttal. You're muted. You're muted, Mr. Zuhl. I apologize. May it please the court. The optional life insurance is specifically pleaded at paragraph 22 to be a completely different benefit from the core life insurance at the three times level that long tenured employees like Ms. Delker are entitled to. To the extent Ms. Zorn is saying that MasterCard disagrees, it presents an issue of fact inappropriate for resolution at the motion to dismiss stage when the complaint has specifically pleaded it. And beyond that, MasterCard itself knows that is a red herring. When MasterCard submitted its form to Prudential swearing that the election had been made and Mr. Delker was entitled to the three times salary benefit, there were several different options it could pick to explain to Prudential the plan by which Mr. Delker was entitled to these benefits. One of those was what's called optional life insurance. That was not checked. Rather, it was another box that was checked that entitled him to the three times life insurance benefit. This optional life insurance is a title of a plan that has absolutely nothing to do with Mr. Delker's entitlement or not to it and MasterCard knows it. I want to ask you one thing. I'm sorry if I didn't interrupt you. Go ahead. I was just going to ask do you dispute that Ms. Delker received financial compensation for the credits that she had accrued? It's certainly not clear from the record itself. As Ms. Zorn states that is her interpretation of what the column to the right means. It simply says employer contribution and she says it's what she would have received had she gotten paid. The record doesn't say she was paid or not. Frankly, Your Honor, I don't know what the evidence will show in that regard. I certainly hope actually that it shows she was paid. It wasn't her obligation to check on a $144,000 policy whether she got $12.93 more or less than what she should have. I don't know how she could have seen that. If she didn't get it then MasterCard is doubly liable because MasterCard would have pocketed the premium because it sure didn't turn it over to Prudential. It was MasterCard's  to be informed by Prudential according to this step that it should have gone to. That she wouldn't have been approved for this insurance until MasterCard was informed by its underwriter that she was eligible. There's nothing in there about informing the employee that she's eligible for three years. MasterCard and Ms. Delker exchanged these submit election confirmation forms showing that the coverage had been in place since 2012. What else is an employee to read and believe? I want to ask you actually kind of hit the point that I wanted to hit. I didn't appreciate this when I looked at the record the first time. It says Life Employer Credit MasterCard Employee. And I'm a plain language guy. It seems that there's at least a pretty good plausible argument if not a definitive argument that your client elected the credits not the life insurance. And I just want to give you a chance to address that because that's a hang up I'm having. Yes, Your Honor. So that is the title of the plan. And the question is what does that result in? The cover at page B where you see that the name of the plan, Your Honor, tells you what it results in. It results in coverage. The name of the plan it could be called XYZ plan. It's title is not so important as what it results in. And the form tells her tells an employee it results in coverage that has a begin date and has a result of two times salary in addition to the one time salary benefit already explained. How can you elect to receive credits that you already have by virtue of your tenure? The only election the benefit describes that you are to make is the election to receive the coverage itself. And that's what the form does. Okay. Thank you, Mr. Zul. Thank you, counsel. Ms. Zorn, the court appreciates both counsel's argument to the court this morning.  that you've already submitted, we will take your case under advisement. Counsel may be excused. Thank you. Madam Clerk, I believe that's all for today.